M. Lynn Dunlap, Jerome County Public Defender, Twin Falls, for appellant.

Hon. Alan G. Lance, Attorney General; Kimberly A. Coster, Deputy Attorney General, Boise, for respondent.

975 P.2d 223

**Thomas Lee STONE, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 24488.

Court of Appeals of Idaho.

March 3, 1999.

PERRY, Chief Judge

Thomas Lee Stone appeals from the district court's order dismissing his application for post-conviction relief following an evidentiary hearing. Stone argues on appeal that he was mentally incompetent at the time of his criminal trial and requests that this Court vacate his judgment of conviction. For the reasons stated below, we affirm.

### I.

### FACTS AND PROCEDURE

Stone was arraigned May 8, 1992, on charges that he assaulted and battered a woman with the intent to commit rape. Stone proceeded to trial, was found guilty by a jury on October 9, 1992, and was sentenced to a term of imprisonment. He did not file a direct appeal.

On August 12, 1996, Stone filed a pro se application for post-conviction relief. . The district court appointed counsel to represent Stone, and an evidentiary hearing was held. Although the application for post-conviction relief was filed beyond the one-year statute

of limitation, the district court determined that the statute of limitation should be tolled because Stone had met his burden to show that he was "mentally incapacitated during his stay in the penitentiary." Thus, the district court addressed Stone's claim that he was also mentally incompetent during his criminal trial.

The district court found: (1) Stone had suffered from bipolar psychosis for a time extending long before the trial; (2) the psychosis was episodic and at the time of trial was not in complete remission; (3) when in the severe stage, Stone's psychosis made him lose touch with reality and he was incapable of understanding criminal proceedings against him; (4) with the help of medication, Stone experienced a much less severe state of psychosis and appeared capable of understanding the proceedings around him and participating meaningfully therein; and (5) Stone was rarely in this less severe state, but was during the trial in his criminal case. The findings were based on the testimony of two witnesses: a psychiatrist, who testified that in his expert opinion Stone was incompetent during trial, and Stone's attorney from his criminal case, who testified that Stone acted rationally and appeared to understand the trial proceedings. The district court concluded that Stone was competent at the time of trial and denied Stone's application for post-conviction relief. Stone appeals, arguing that the evidence presented at the evidentiary hearing was insufficient to uphold the district court's findings.[1]

## II.

### ANALYSIS

■ An application for post-conviction relief initiates a proceeding which is civil in nature. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State,* 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State,* 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct.App.1992). Like a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-convic-

tion relief is based. I.C. § 19–4907; *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). Here, the district court held an evidentiary hearing and found that Stone failed to prove by a preponderance that he was incompetent at the time of trial.

When reviewing a decision denying post-conviction relief after an evidentiary hearing, we will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State,* 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State,* 115 Idaho 72, 764 P.2d 439 (Ct.App.1988).

Stone contends there was no substantial competent evidence to support the district court's finding that he was mentally capable of assisting in his own defense during his criminal trial. Stone called Dr. Worst, an expert in the field of psychiatry, to testify at the post-conviction evidentiary hearing. Doctor Worst testified that in his opinion, based on Stone's history gathered from medical documents dating from 1972 to the time of the hearing, and based on Stone's actions during trial revealed by excerpts from the trial transcripts, Stone was mentally incompetent during trial. Stone contends that the state's evidence was insufficient to rebut this testimony because the state failed to present an expert witness, only presenting the testimony of Stone's trial counsel. Stone argues that trial counsel was not an expert in psychiatry and that she was unqualified to give an opinion as to whether Stone was competent at the time of trial.

■ Idaho Code Section 18–210 deals with the mental competency of a criminal defendant and provides:

No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the

---

1. Stone also lists a sentencing issue in his appellate brief, but conceded at oral argument that he waived the issue by failing to support it with argument or authority.

commission of an offense so long as such incapacity endures.

The test to determine whether a criminal defendant is competent to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *State v. Powers*, 96 Idaho 833, 842, 537 P.2d 1369, 1378 (1975).

At the post-conviction relief hearing, Doctor Worst testified:

> I would have to say that based on the bulk of the data that was available, which shows his continuous psychotic state, that it's more likely than not from a psychiatric perspective that had he been properly evaluated at the time he would have been found not competent to assist in his defense.

Doctor Worst also testified:

> I am of the opinion that more than likely had someone questioned him about the defense at the time, it wouldn't have come across, questioned him about his request for a psychiatric evaluation, it still would not have met the standard for a full competency to assist in his defense.

Doctor Worst based his testimony, in part, on the behavior Stone exhibited during his arraignment and trial. Doctor Worst cited the fact that Stone asserted that he was a lawyer at his arraignment, although he is not. Stone also ran for sheriff while he was incarcerated and awaiting trial. Doctor Worst opined that, based on Stone's actions, he suffered from delusions of grandeur.

■ Trial counsel was the only witness at the evidentiary hearing, however, who actually had contact with Stone during his trial. Trial counsel testified that she met with and counseled Stone following his arrest, before his preliminary hearing, and again in preparation for trial. Trial counsel testified that she thought Stone understood the charges and their consequences. She discussed with Stone whether Stone should take the witness stand in his defense, and he made the decision not to testify. Trial counsel testified that she believed Stone understood her conversations with him and that he made sense when he spoke to her. Trial counsel did admit that Stone ended sentences with "Thank you very much. Have a nice day," when the conversation was not complete.

Doctor Worst testified that Stone suffered from episodic psychosis, and that "if he was in a significant state of remission, given the fact that we know he's got reasonable intelligence, it's more likely than not then that he probably could [assist in his own defense]." The district court accepted this evidence in one of its findings of fact and ultimately concluded that at the time of trial Stone was in a state of remission and rationally understood the proceedings against him.

Stone had the burden to prove by a preponderance of evidence that he was incompetent at the time of trial. Under the standards set forth by the United States Supreme Court, Stone had to prove that he did not have the ability *at the time of trial* to consult with his attorney with a reasonable degree of rational understanding and that he did not have a rational understanding of the proceedings against him. *Dusky*, 362 U.S. at 402, 80 S.Ct. 788.

The medical reports in this case, upon which Dr. Worst relied to reach his opinion, were generated before Stone's trial and then again after trial while Stone had been serving his prison sentence. No psychiatrist evaluated Stone during his trial. Doctor Worst has never personally met Stone or evaluated him.

Stone presented no psychological evaluations conducted during the time of trial, and trial counsel, the only person who had personal contact with Stone during his trial, testified that she was not concerned about Stone's ability to assist in his own defense because she believed he understood the proceedings. Stone asserts that the district court placed too much importance on counsel's testimony as compared to Dr. Worst's expert testimony. The test delineated by the United States Supreme Court in *Dusky* is an objective standard and does not necessarily require the testimony of a psychiatrist, although such testimony should be given its

proper weight against other testimony produced at the post-conviction hearing. Trial counsel, who has had personal communications with a defendant throughout the criminal case, can provide competent testimony regarding whether the defendant acted rationally and was able to understand the proceedings at the time in question.

The district court made a credibility assessment of trial counsel and found her statement that Stone understood the proceedings to be credible. The district court also determined that although it trusted Dr. Worst's opinion that Stone suffered from episodic psychosis, it would not accept Dr. Worst's opinion that Stone was incompetent at the time of trial because Dr. Worst did not base his decision on any personal communications with Stone, nor on any medical evaluations performed on Stone during trial. In addition, although Stone has provided portions of the transcript from the criminal trial in our appellate record, he has not included the entire transcript. Thus, we are left without the ability to conduct a complete review of the proceedings.

The district court relied on trial counsel's testimony, noting that she had the opportunity to discuss the case with Stone on numerous occasions and also observe him during trial. Based on this testimony, we hold that Stone has failed to demonstrate that the district court's findings were clearly erroneous. Therefore, we affirm the district court's order denying Stone's application for post-conviction relief.

Judge LANSING and Judge Pro Tem EISMANN, CONCUR.