192 P.3d 1036

**Debra K. CHAVEZ, Plaintiff–Appellant,**

v.

**William J. BARRUS, First American Title, Co., and Baker & Harris, Attorneys at Law, Defendants–Respondents.**

**No. 33727.**

Supreme Court of Idaho,
Idaho Falls, April 2008 Term.

Aug. 26, 2008.

Curtis N. Holmes, Pocatello, for appellant.

Baker & Harris, Blackfoot, for respondents William Barrus and Baker & Harris. Jared Harris argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondent First American Title Company. William Faler argued.

HORTON, Justice.

Appellant Debra K. Chavez appeals from an order of the district court dismissing her quiet title action and granting summary judgment to Respondents William J. Barrus, Baker & Harris, and First American Title Company (First American) (collectively Respondents). We affirm the district court's dismissal of the quiet title action.

In a separate order, the district court awarded attorney fees to Barrus and Baker & Harris pursuant to I.C. § 12–120(1) and to First American pursuant to I.C. §§ 12–120(1) and 12–121. We reverse the district court's order awarding attorney fees to Respondents to the extent it was based on I.C. § 12–120(1), because we do not find that Chavez's complaint clearly indicates that she sought $25,000 or less in damages. However, because we find Chavez's claim against First American to be frivolous, we affirm the district court's order to the extent it awarded attorney fees to First American under I.C. § 12–121. We further award First American attorney fees on appeal pursuant to I.C. § 12–121 and I.A.R. 11.1.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Chavez and Barrus were previously married. During the course of their marriage they acquired a home in Bingham County, which is the disputed property at the center of this appeal. They were divorced on July 3, 2002. Baker & Harris represented Barrus in the divorce action. The divorce decree incorporated the parties' Parenting and Property Settlement Agreement (Agreement), which set forth the distribution of the parties' community property and debts. The Agreement provided in relevant part:

*Assets Distributed to [Barrus]*

... The house located at 363 W 150 N, Blackfoot, Idaho ...

All equity in the house subject to an obligation to pay [Chavez] a portion of her equity as set forth hereafter; ....

*Assets Distributed to [Chavez]*

... The amount of $21,500.00 from the house, to be paid within 3 years at 0% interest;

In the event [Barrus] sells the house within 3 years, [Chavez] shall received [sic] the greater of $21,500.00 or ½ of the equity generated by the sale, after deducting all sale costs and expenses ... [Barrus] will receive his ½ of the equity upon refinance or sale of the property, the greater of $19,500.00 or ½ of the equity.

. . . .

*Debts Distributed to [Barrus]*

Debt on residence;

. . . .

*Debts Distributed to [Chavez]*

... [Chavez] will pay [Barrus] the sum of [$2,000.00] to be used towards payment of the debt given to [Barrus].

. . . .

*ATTORNEY'S FEES*

If the agreement is breached by either party, the breaching party shall pay all reasonable costs, expenses, and attorney's fees incident to the breach, which are actually incurred by the other party and reasonably necessary to enforce this Agreement by litigation.

An Order of Clarification later amended the decree to include a legal description of the house.

On December 13, 2002, Barrus filed a Motion for Judgment, seeking a judgment against Chavez for $3,046.38 for sums she was required to pay under the Agreement. On January 23, 2003, the magistrate entered a Judgment against Chavez for $2,000.00, and specified that Barrus could execute on the Judgment on February 6, 2003. On February 5, 2003, Barrus, through his attorneys Baker & Harris, sent a letter directing the Bingham County Sheriff to execute on Chavez's "right to receive" monies from Barrus in order to satisfy the Judgment against Chavez. Barrus provided the Sheriff with a Writ of Execution, Notice of Attachment, and Claims of Exemption package. The Notice of Attachment attached "All right to receive monies from William J. Barrus as set forth in the Decree of Divorce between William J. Barrus and Debra K. Barrus...." Marjorie Anderson, a civil deputy for the Bingham County Sheriff, received the execution documents on February 10, 2003. Anderson states that she served the Writ of Execution on Barrus and mailed the debtor's packet to Chavez at the residence where Chavez was then living. Anderson did not personally serve Chavez.

On March 3, 2003, Deputy Byron Howell posted a Notice of Sale in three public places in Blackfoot, according to Anderson's instructions. The sheriff's sale was held on March 10, 2003. At the sale, Barrus purchased his obligation to Chavez under the decree of divorce, specifically, "$21,500 or ½ of the equity generated by the sale [of the house], after deducting all sale costs or expenses."

Chavez contends that Barrus delayed pursuing execution until she was out of state in order to ensure that she would not receive notice of the execution. According to Chavez, she did not receive the Writ of Execution or the debtor's packet and, thus, she was not aware of the sheriff's sale. Chavez explained that she had experienced difficulty in receiving mail at her residence due to theft and non-delivery.

On March 20, 2003, (after the sheriff's sale had already occurred) Chavez filed a Chapter

bankruptcy petition. She identified Barrus as a creditor in the bankruptcy proceedings. The bankruptcy court granted Chavez a discharge on July 3, 2003 and the case was closed.

On November 1, 2004, Barrus issued a promissory note to Baker & Harris, secured by a deed of trust on the house, for payment of the legal fees Barrus incurred in the divorce.

Barrus decided to refinance the mortgage on the house in December, 2004. At the request of Coventry Mortgage, First American issued a commitment for title insurance on the house on December 13, 2004. This first title commitment reflected that the house was owned by Chavez and Barrus, and included an exception for the $21,500 debt owed to Chavez. On January 3, 2005, Baker & Harris recorded the divorce decree in Bingham County and Barrus recorded the Order of Clarification that included the legal description of the house. First American then issued a second title insurance commitment (superseding the first), reflecting that the house was owned by Barrus and listing an exception for the debt to Chavez. That same day, Barrus, by affidavit, stated the $21,500 debt to Chavez had been extinguished in the sheriff's sale and documented the sale. First American then issued a third title insurance commitment without the exception for the $21,500 debt.

After accepting First American's title commitments, Coventry Mortgage prepared the refinancing documents for Barrus. Closing on the refinancing occurred on January 18, 2005. With the proceeds, Barrus paid $8,936.92 to Baker & Harris and extinguished the deed of trust. Barrus also received $12,308.24 in loan proceeds.

In July of 2005, three years after the divorce decree was entered, after Barrus failed to pay Chavez the share of the equity in the house that she believed was due her under the terms of the Agreement, she contacted her attorney to initiate contempt proceedings. At this time, she first learned of Barrus's execution on his earlier judgment. Following a hearing, the magistrate ruled that the contempt action would not be acted upon until Chavez filed a quiet title action.

On June 14, 2006, Chavez filed a Complaint to Quiet Title with the district court. In her complaint, Chavez sought both an order for payment of the $21,500 she believed due under the terms of the Agreement and an order quieting title in favor of Chavez "for her one-half (1/2) share in the subject real property." Chavez also sought costs to revise and record the deed and other documents required to quiet title, reimbursement for the funds received by Barrus, Baker & Harris, and First American from the refinancing, and attorney fees.

Chavez moved for summary judgment on August 3, 2006. Barrus and Baker & Harris moved for summary judgment on August 21, 2006. First American moved for summary judgment on August 21, 2006. Chavez filed additional motions: a motion to amend her complaint to seek punitive damages, a motion to join additional parties and add a cause of action, a second motion to add an additional cause of action, a motion to compel and a motion to continue the summary judgment hearing.[1]

The district court heard argument on the pending motions on September 18, 2006. Chavez's motions to compel and to continue the summary judgment hearing were both denied. The district court took the motions for summary judgment under advisement and stated it would consider the motions to amend after resolving the motions for summary judgment. On October 19, 2006, the district court sent a letter to the parties requesting additional information as to whether the Bingham County Sheriff attempted to personally serve Ms. Chavez prior to mailing the Writ of Execution and debtor's packet. The parties responded to the inquiry with additional briefing.

After considering the file, pleadings, depositions, admissions, affidavits, and the arguments of counsel, the district court concluded that the decree of divorce converted Chavez's real property interest in the house into a personal property interest in the $21,500 debt owed by Barrus to her for the equity in

---

1. These motions are not in the record before this Court on appeal.

the house. The district court held that Barrus correctly followed the statutory procedures for executing against personal property and declined to vacate the sheriff's sale for reasons of equity. Concluding that any interest that Chavez had in the house was extinguished, the district court denied Chavez's motion for summary judgment and dismissed her quiet title action. The district court granted summary judgment in favor of Barrus and Baker & Harris. The district court held that First American owed no duty to Chavez and granted summary judgment in favor of First American. The issue of attorney fees was not addressed in the district court's Memorandum Decision and Order

Chavez appealed the district court's grant of summary judgment in favor of Respondents to this Court. Subsequently, the district court issued a separate decision awarding attorney fees and costs to Respondents. The district court awarded attorney fees to Barrus and Baker & Harris pursuant to I.C. § 12–120(1) and to First American pursuant to I.C. §§ 12–120(1) and 12–121. Chavez then filed an Amended Notice of Appeal. The district court entered judgments in favor of Barrus and Baker & Harris on July 10, 2007 and First American on July 18, 2007. The parties then submitted supplemental briefs on the issue of attorney fees to this Court.

## II. STANDARD OF REVIEW

The standard of review in cases involving a grant of summary judgment is well-established:

we "employ [ ] the same standard as that used by the district court." *Riley v. W.R. Holdings, LLC*, 143 Idaho 116, 119, 138 P.3d 316, 319 (2006). Summary judgment shall be rendered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

*Jenkins v. Barsalou*, 145 Idaho 202, 205, 177 P.3d 949, 952 (2008). "[W]here the evidentiary facts are not disputed and the trial court rather than a jury will be the trier

of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). "The test for reviewing the inferences drawn by the district court is whether the record reasonably supports the inferences." *Walker*, 132 Idaho at 176, 968 P.2d at 665.

## III. ANALYSIS

This case turns on the character of the property interest Chavez was awarded in the marital home via the property settlement agreement incorporated into the decree of divorce. The facts are not in dispute. It is only the inferences that can be drawn from those facts upon which the parties disagree. As the ultimate trier of fact, the district court was free to draw reasonable inferences from those facts. There is no indication that the district court was unreasonable in this regard. Therefore, this opinion addresses whether the district court correctly applied the law to those inferences. The primary issue of law to be resolved is whether the district court was correct in holding that the decree of divorce divested Chavez of her real property interest in the house and converted it into a lien—a personal property interest. All other issues are subsumed under this determination. Because the district court did not err in this determination, we affirm the district court's order dismissing Chavez's quiet title action.

### A. The divorce decree, which incorporated the Agreement, divested Chavez of her real property interest in the house.

The pivotal question in this case is whether the divorce decree, which incorporated the Agreement, divested Chavez of her real property interest in the marital home. This a question of law over which this Court exercises free review. *Ada County Highway Dist. v. Total Success Inv., LLC*, 145 Idaho 360, 365, 179 P.3d 323, 328 (2008). The resolution of this question involves three inquiries: first, interpretation of the Agreement; second, determination of the effect of

the decree; and third, determination of the nature of Chavez's lien interest in the property.

1. *The district court properly interpreted the Agreement as awarding the house to Barrus and creating a lien in favor of Chavez.*

 The parties' Agreement provided that: "The house located at 363 W 150 N, Blackfoot, Idaho," and "All equity in the house" are to be "distributed" to Barrus subject to his "obligation to pay [Chavez] a portion of her equity." ·The Agreement further "distributed" the debt on the residence to Barrus. Before the district court, Chavez asserted that the wording of the Agreement not only required Barrus to pay her a $21,500 interest in the equity in the house but also maintained her undivided one-half interest in the title. Chavez contended that Barrus, by agreeing to assume the· debt for the home and to pay her one-half of the equity in the home, did not receive full title, but rather, merely a right to possess · the house. Rejecting Chavez's assertion that Barrus received "at most, possession of the house," the district court concluded that the Agreement awarded the house to Barrus and created a lien in favor of Chavez.

 This Court's standard of review of a lower court's interpretation of an instrument depends on whether the instrument is ambiguous. *C & G, Inc. v. Rule,* 135 Idaho 763, 765, 25 P.3d 76, 78 (2001) (citing *DeLancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986)). The question of whether an instrument is ambiguous is a question of law, over which this Court exercises free review. *Id.* In deciding whether a document is ambiguous, this Court must seek to determine whether it is "reasonably subject to conflicting interpretation." *Bondy v. Levy,* 121 Idaho 993, 997, 829 P.2d 1342, 1346 (1992). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G,* 135 Idaho at 765, 25 P.3d at 78 (citing *Juker v. Am. Livestock Ins. Co.,* 102 Idaho 644, 645, 637 P.2d 792, 793 (1981)). "In interpreting a deed of conveyance, the pri-

mary goal is to seek and give effect to the real intention of the parties." *Id.* at 766, 25 P.3d at 79 (citing *Gardner v. Fliegel,* 92 Idaho 767, 770, 450 P.2d 990, 993 (1969); *Bumgarner v. Bumgarner,* 124 Idaho 629, 637, 862 P.2d 321, 329 (Ct.App.1993)).

While the Agreement may have been more artfully drafted, the district court held that the clear intention of the parties was for Barrus to receive the ˙home and for Chavez to receive a lien in her favor, securing Barrus's obligation to pay Chavez her equity interest in the home. Despite Chavez's assertions to the contrary, the settlement agreement in this case provided a clear and practical division of the marital property. Here, the lien's value was fixed at a specific dollar amount ($21,500) or discernible by mathematical formula (1/2 the equity) and the right to collect upon the lien was enforceable upon the occurrence of a particular operative event (the passage of three years from the decree of divorce or upon sale of the house). Barrus assumed the majority of the community debt and was therefore awarded title to the house to offset the marital debt he incurred, which included making continued mortgage payments. In effect, the lien served as an equalizing payment. We conclude that the language of the Agreement does not appear "reasonably subject" to Chavez's "conflicting interpretation" and that the interpretation advocated by Barrus and adopted by the district court .is the only correct one.

2. *The effect of the decree was to convey title to the house to Barrus.*

 The district court held that "Chavez does not have a real property interest in the house." Chavez does not dispute that the Agreement created a lien in her favor; rather, she argues that the district court erred in determining that she no longer had a real property interest in the house because the language in the Agreement did not use terms of conveyance, such as "deed" or "grant" or "convey." We disagree.

The Agreement between Chavez and Barrus allocated their property and debts between them, including their respective interests in the homestead. In assigning the

interests in the marital homestead through a settlement agreement, certain minimum requirements must be met. "All contracts for marriage settlements must be in writing, and executed and acknowledged or proved in like manner as conveyances of land are required to be executed and acknowledged or proved." I.C. § 32–917. The general rule for conveyances of land states: "A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing. The name of the grantee and his complete mailing address must appear on such instrument." I.C. § 55–601; *see also* I.C. § 9–503 (stating that transfers of real property must be in writing). The Agreement between Chavez and Barrus satisfied the requirements of I.C. § 32–917.

The magistrate presiding over the divorce action was required to divide the parties' community property. Idaho Code § 32–712 provides, in pertinent part, as follows:

In case of divorce by the decree of a court of competent jurisdiction, the community property and the homestead must be assigned as follows:

. . . .

2. If a homestead has been selected from the community property, it may be assigned to either party, either absolutely, provided such assignment is considered in distribution of the community property, or for a limited period, subject in the latter case to the future disposition of the court; or it may be divided or be sold and the proceeds divided.

Similarly, I.C. § 32–713 provides: "The court, in rendering a decree of divorce, must make such order for the disposition of the community property, and of the homestead. . . ."

■■■■ The policy underlying these statutes is evident. In divorce cases, Idaho courts have a duty not only to dissolve the parties' marital status, but also to make an equitable distribution of the parties' community property in order to disentangle the parties' legal affairs. Idaho courts must undo the bonds of the divorcing parties' community property relationships in order to permit the divorcees to go on with their lives independent of one another. Parties to a divorce "have a right to have their respective interests in their property after they are divorced, definitely and finally determined in the decree which divorces them," so that the prospect of future litigation is less likely. *Shaffer v. Shaffer,* 43 Wash.2d 629, 262 P.2d 763, 764 (1953).

■■■■ "[D]ivorcing parties may perceive mutual advantages in a lien/title form of disposition. Where, for example, the parties' principal wealth consists of equity in a home, this arrangement may be the only practical means of dividing that wealth without forcing a sale of the property." *Byrne v. Ackerlund,* 108 Wash.2d 445, 739 P.2d 1138, 1141 (1987). In consideration of the equitable distribution of the community property, a court has broad discretion to assign the homestead to either party "absolutely," or "for a limited period," or can alternatively order the home to be divided, or sold and the proceeds split accordingly. I.C. § 32–712. "[W]here one party holds title and the other a lien, the parties' respective interests are more removed" than in a situation where both parties continue to hold title following the divorce. *Byrne,* 739 P.2d at 1141.

We do not agree with Chavez's contention that the Agreement need contain formalized language of conveyance. Rule 70 of the I.R.C.P. provides that "[i]f real or personal property is within the state, the court . . . may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law." In this case, the divorce decree expressly *incorporated* the Agreement, which identified the house as an asset distributed to Barrus. Via its incorporation, all the provisions of the Agreement became enforceable by the court as a part of its decree. *Phillips v. Dist. Court of the Fifth Judicial Dist.,* 95 Idaho 404, 405, 509 P.2d 1325, 1327 (1973). Therefore, we conclude that the divorce decree, in accordance with the parties' Agreement, divided the parties' community property, both real and personal, and vested title to the home in Barrus, thus effectuating the conveyance.

### 3. *Chavez's lien was a personal property right, not a real property interest.*

 The district court concluded that, as a matter of law, the lien was personal property and conferred no interest in the title to the home to Chavez. Under I.C. § 55–101, real property consists of: lands, possessory rights to land, ditch and water rights, mining claims, and that which is affixed or appurtenant to land. Every other kind of property is personal property. I.C. § 55–102. Under Idaho law, a lien is a charge upon property to secure payment of a debt and transfers no title to the property subject to the lien. I.C. § 45–109; I.C. § 45–101; *Middlekauff v. Lake Cascade, Inc.*, 103 Idaho 832, 834, 654 P.2d 1385, 1387 (1982); *see also* 51 Am. Jur.2d Liens § 2 (stating that a lien confers no ownership interest).

Because this is a matter of first impression in Idaho, the district court relied largely on the legal reasoning in a decision from the Court of Appeals of Washington, *Mueller v. Rupp*, 52 Wash.App. 445, 761 P.2d 62 (1988), a case that shares many factual similarities with the instant case and arises from another community property jurisdiction. In *Mueller*, the property settlement agreement attached to the divorce decree between Mr. and Ms. Rupp awarded the title in the house to the wife and a lien for one half of the equity in the house to be paid to the husband when the home was sold on the youngest child's eighteenth birthday. *Id.* at 63. The assignee of a judgment against Mr. Rupp executed against his interest in the equity in the marital home, and purchased the interest at a sheriff's sale for $5,000 before assigning it to Mueller. Mr. Rupp moved to vacate the sheriff's sale on the basis that the statutory procedures for executing against real property were not followed. The trial court vacated the sheriff's sale after concluding that Mr. Rupp's interest was not converted into personal property by the property division in the divorce decree.

 The Court of Appeals of Washington reversed, holding that a lien interest in the marital home awarded in a property settlement agreement is personal, not real, property and therefore it is only necessary to follow the procedures for executing against personal property when executing against such an interest. *Id.* at 66; *see also Byrne*, 739 P.2d at 1141 (holding that where a property settlement in divorce decree divided the interest in certain real property by giving title to husband and wife a lien on the real property, the wife's lien was "merely an encumbrance to secure an obligation and involves no characteristics of co-ownership"); 73 C.J.S. Property § 35 (2008) (stating: "A lien on a homestead is personal property [and an] interest in a family residence acquired pursuant to a divorce decree that incorporates a property settlement agreement is personal property"); *In re Bumpass*, 196 B.R. 780, 782 (Bankr. E.D.Tenn.1996) (holding that "divorce decree and settlement resulted in an *equitable conversion* of the debtor's interest from real property to personal property.") (emphasis in original). We find the legal reasoning espoused in *Mueller* sound and congruent with Idaho's statutory scheme. For that reason, we affirm the district court's holding.

### B. The district court did not err when it determined that Chavez was not entitled to equitable relief from the sheriff's sale.

Chavez contends that, since she was not personally served pursuant to I.C. § 8–506B, the sheriff's sale should be set aside because it did not comply with the statutory procedures for executing against real property. However, the sheriff provided notice to Chavez via mail pursuant to I.C. § 8–507(A). This is all that is required by statute when executing against personal property. I.C. § 8–507 *et seq.*; I.C. § 11–301. Because we affirm the district court in its determination that the decree of divorce divested Chavez of her real property interest in the home, we affirm the district court's conclusion that the sheriff followed the proper procedures in executing against her lien interest. *See e.g., Mueller*, 761 P.2d at 66.[2]

---

**2.** Chavez has argued that her debt to Barrus was discharged in later bankruptcy proceedings. This argument is based upon the premise that

Barrus had improperly executed on her lien interest. She does not suggest that the bankruptcy

Chavez asserts that, even assuming the proper notice procedures were followed, the sheriff's sale should nonetheless be vacated on equitable grounds. First, she points to the disparity between the $2,000 debt she owed Barrus and the $21,500 debt which was effectively extinguished by the sheriff's sale. Chavez maintains that the sums are so disproportionate as to make the sale voidable. Additionally, although Chavez does not contest that the sheriff actually mailed her the appropriate documents, she maintains that she had no actual notice of the sale since she never physically received the notice documents. Moreover, Chavez argues that Barrus acted in bad faith by purposely waiting until he knew she would be out of the state before executing on her interest.

■ This Court has recognized the existence of an equitable right to redeem property and to set aside a sheriff's sale. *Tudor Eng'g Co. v. Mouw*, 109 Idaho 573, 575, 709 P.2d 146, 148 (1985); *S. Idaho Prod. Credit Ass'n v. Ruiz*, 105 Idaho 140, 144, 666 P.2d 1151, 1155 (1983); *Steinour v. Oakley State Bank*, 45 Idaho 472, 477, 262 P. 1052, 1054 (1928). In determining whether the debtor is entitled to an equitable right of redemption, the trial court must, in its discretion, balance the equities that exist on either side of the dispute. *Tudor Eng'g*, 109 Idaho at 575, 709 P.2d at 148; *Ruiz*, 105 Idaho at 144, 666 P.2d at 1155. So long as the trial court's decision is supported by substantial, competent evidence, it will not be disturbed on appeal. *Tudor Eng'g*, 109 Idaho at 575, 709 P.2d at 148.

■ Our standard of review regarding discretionary decisions is well-established. Abuse of discretion is determined by a three part test which asks whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of rea-

son." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004).

■ The district court explicitly recognized that Chavez's request for equitable relief was committed to its discretion. The district court further recognized that the rule of law pronounced in *Tudor Engineering* applied to its decision. Thus, the only issue is whether the district court reached its decision by the exercise of reason.

The district court acknowledged the disparity between Chavez's lien interest and the judgment that Barrus sought to satisfy by way of execution. The district court considered the conduct of which Chavez complained, noting that Chavez advanced many of her claims of fraudulent conduct without reference to supporting evidence in the record. The district court observed that Barrus, having been awarded the home in the divorce decree, had the right to encumber the home to satisfy his legal fees. The district court noted that Barrus complied with the statutory procedures governing execution on personal property and, unlike the situation in *Tudor Engineering*, there were no innocent third parties affected by the execution. After considering these matters, the district court stated that it had balanced the equities and found that there were "insufficient grounds to justify granting an equitable right of redemption." We are satisfied that the district court's decision reflected the exercise of reason. For this reason, we affirm the district court's conclusion that Chavez was not entitled to equitable redemption.

## C. Chavez's claims against First American are without merit.

■ Chavez's complaint asserted that First American "permitted Barrus to refinance the property without first securing a deed to the property from [Chavez] and without requiring that he pay any portion of the monies owed to her."[3] In the summary

---

proceedings retroactively negated an otherwise valid execution on the judgment.

3. The district court declined to address Chavez's two motions to amend her complaint, one of which was apparently to advance a claim for

slander against title. That decision is not before this Court on appeal and we believe the judgments entered on July 10 and July 18, 2007 to be final judgments. I.A.R. 11(a)(1). However, Chavez's claim would not have been successful.

judgment proceedings, Chavez expanded upon this claim, asserting that "First American owed a duty to her as a lienholder." [4] Chavez further asserted that Respondents, apparently including First American, had "knowingly and intentionally engaged in a pattern of fraudulent conduct which purported illegally to deprive [Chavez] of her claim of legal title and of her equitable interest in the subject real property including the monies rightfully owed her...." [5]

The district court held that Chavez had failed to prove the existence of a duty owed to her by First American. Whether a duty exists is a question of law. *Coghlan v. Beta Theta Phi Fraternity*, 133 Idaho 388, 400, 987 P.2d 300, 312 (1999). The district court noted that Chavez presented no evidence supporting her assertion that First American owed her a duty. We agree. Chavez has presented no meaningful legal or factual argument establishing the existence of a duty owed to her by First American. There was no special relationship between Chavez and First American that gave rise to a duty. There was no contract between First American and Chavez. First American did not represent to Chavez that it was performing any services for her. For these reasons, the district court did not err in concluding that First American did not owe Chavez a duty.

A claim of fraud requires the plaintiff to establish nine elements with particularity: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005) (citing *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002)) (citing *Hines v. Hines*, 129 Idaho 847, 851, 934 P.2d 20, 24 (1997)). Chavez has not established that First American made a false statement in its title insurance commitment, that she was aware of the title commitment at the time it was issued or shortly thereafter, that she relied on the statements in the title commitment, or that she suffered an injury as a result of the statements in the title insurance commitment. For these reasons, the district court did not err by dismissing Chavez's fraud claim against First American.[6]

"Slander of title requires proof of four elements: (1) publication of a slanderous statement; (2) its falsity; (3) malice; and (4) resulting special damages." *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003) (citing *Weaver v. Stafford*, 134 Idaho 691, 701, 8 P.3d 1234, 1244 (2000)) (citing *Matheson v. Harris*, 98 Idaho 758, 760–61, 572 P.2d 861, 863–64 (1977)). Because we affirm the district court's finding that Chavez was divested of any real property interest in the marital home, and that the sheriff's sale on her equitable interest was properly executed, it follows that: (i) Chavez could not have suffered any "resulting special damages" since she no longer held title in the home, and (ii) the title commitment issued by First American was not made false by reason of not listing Chavez's extinguished interest in the house.

4. As Chavez's responses to Respondents' motions for summary judgment are not in the record before this Court on appeal, the Court has relied upon the district court's characterization of her claims in an effort to understand the theory upon which she has relied.

5. As to this latter claim, apparently in recognition of the requirement of I.R.C.P. 9(b) that fraud must be pled with particularity, the district court declined to address Chavez's fraud claim, stating that "the Court may allow Chavez to amend the pleadings." It does not appear that Chavez pursued a motion to amend. However, the district court granted summary judgment in favor of First American, necessarily including a dismissal of Chavez's fraud claim, and Chavez has appealed that decision. For that reason, this Court will address the merits of this issue.

6. On appeal, Chavez has advanced the theory that "as a part owner of the subject real property, she stood as a third-party beneficiary to any contract affecting the property, and that [First American] must reasonably be held liable for her damages incurred as the result of the knowing misrepresentations made to [the lender]." We are not so persuaded. First, as we have determined, Chavez was not "a part owner of the subject real property." Second, this Court has not previously engrafted the body of contract law relating to third-party beneficiaries to the law of intentional torts. Chavez's simple assertion that we should do so in this case is not persuasive. Third, there is simply no evidence that Chavez was an intended beneficiary of the contract between First American and the lender.

In light of the foregoing, it is clear that Chavez has presented no valid claim as against First American. Therefore, we affirm the district court's order granting summary judgment to First American.

### D. The district court's award of attorney fees to Respondents is affirmed in part and vacated in part.

After the grant of summary judgment to Respondents had been issued and appealed, the district court issued a separate opinion on attorney fees and costs. The district court awarded all Respondents attorney fees based on I.C. § 12–120(1). Additionally, First American was awarded attorney fees based on I.C. § 12–121. However, Barrus and Baker & Harris's request for attorney fees bases on I.C. § 12–121 was denied.

#### 1. *The district court's award of attorney fees based on I.C. § 12–120(1) is vacated.*

 Respondents were awarded attorney fees based upon I.C. § 12–120(1). That statute mandates an award of attorney fees to the prevailing party in cases where the amount pleaded was $25,000 or less. I.C. § 12–120(1). This Court has narrowly construed the application of I.C. § 12–120(1) to cases where it is *clear* that the amount pleaded does not exceed $25,000. *Aberdeen–Springfield Canal Co. v. Peiper,* 133 Idaho 82, 94–95, 982 P.2d 917, 929–30 (1999). "This Court has placed 'a premium' on examining the pleadings when evaluating the applicability of I.C. § 12–120(1)." *Id.* "The pleadings must precisely comply with the statutory mandate and formally plead an amount of $25,000 or less." *L & W Supply Corp. v. Chartrand Family Trust,* 136 Idaho 738, 746, 40 P.3d 96, 104 (2002).

 Chavez states the following in her Complaint:

WHEREFORE, Plaintiff prays that upon examination into this matter as required by law that the Court enter an Order as follows:

1. For a Decree quieting title to Plaintiff for her one-half (1/2) share of the subject real property hereinbefore described; and

2. That Defendants be required to pay *all costs of preparing any other documents* which may be necessary to quiet Plaintiff's title to the subject parcels of real property; and

3. For reimbursement to Plaintiff for any revenue wrongfully received by Defendants following the refinancing of the subject real property, up to and including the amount of TWENTY–ONE THOUSAND FIVE HUNDRED DOLLARS ($21,500.00) *plus all interest accruing thereon;* and

4. For an award of attorney's fees and costs incurred herein, as set forth above; and

5. For such other further relief which the Court may deem just and equitable in the premises.

(emphasis added).

The district court noted that Chavez repeatedly claimed that she was entitled to the $21,500 she was allocated in the settlement Agreement. Because this amount was less than $25,000 the district court awarded fees to Respondents as the prevailing parties under I.C. § 12–120(1). Chavez contends that it was error to consider the $21,500 in isolation. We find that the district court's determination that Chavez *clearly* pled $25,000 or less is not supported by a review of her complaint. Chavez sought an order giving her an undivided one-half interest in the real property, as well as the sum of $21,500, accrued interest and costs of document preparation. Therefore, the district court's award of attorney fees to Respondents is vacated to the extent it is based on I.C. § 12–120(1).

#### 2. *The district court's award of attorney fees to First American under I.C. § 12–121 is affirmed.*

The district court found that First American was also entitled to an award of attorney fees pursuant to I.C. § 12–121, which broadly authorizes a court to award reasonable attorney fees to the prevailing party. However, an award may only be granted under this section if the plaintiff pursued the case "frivolously, unreasonably, or without foundation." I.R.C.P. 54(e)(1).

A district court's determination on whether an action was brought or defended frivolously will not be overturned absent an abuse of discretion. *Anderson v. Ethington,* 103 Idaho 658, 660, 651 P.2d 923, 925 (1982). As previously noted, in reviewing the trial court's exercise of discretion, this Court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr.,* 119 Idaho at 94, 803 P.2d at 1000.

The district court clearly perceived the decision whether to award attorney fees pursuant to I.C. § 12–121 as one of discretion. Each of the Respondents requested an award of attorney fees pursuant to this statute, however, the district court awarded fees only to First American. This decision was within the boundaries of the district court's discretion. The district court explicitly recognized the applicable legal standards. The district court clearly reached its decision by the exercise of reason. The district court considered that Chavez failed to present any substantial legal or factual argument in support of her claim that First American owed her a duty. In the absence of a meaningful factual or legal basis for her claim, the district court concluded "that the inclusion of First American in this litigation was a decision based on the sole desire to include deep pockets. . . ." We cannot disagree with the district court's reasoning. We affirm the district court's award of attorney fees to First American based on I.C. § 12–121.

**E. Attorney fees on appeal are awarded to First American but not to Barrus and Baker & Harris.**

Respondents also request attorney fees on appeal pursuant to I.C. § 12–120(1). This Court has held that I.C. § 12–120 mandates an award of attorney fees to the prevailing party on appeal as well as at trial. *Cox v. Mulligan,* 142 Idaho 356, 359, 128 P.3d 893, 896 (2005) (citing *Downey Chiropractic Clinic v. Nampa Restaurant Corp.,* 127 Idaho

283, 287–88, 900 P.2d 191, 195–96 (1995)). Although Respondents are the prevailing parties on appeal, their request for attorney fees on appeal pursuant to I.C. § 12–120(1) is denied since, as was stated above, it was error for the district court to hold that Chavez *clearly* pled less than $25,000 in her complaint.

On appeal, Barrus also asserts that he is entitled attorney fees pursuant to the Agreement, which provides:

**ATTORNEY'S FEES**

If the agreement is breached by either party, the breaching party shall pay all reasonable costs, expenses, and attorney's fees incident to the breach, which are actually incurred by the other party and reasonably necessary to enforce this Agreement by litigation.

This litigation did not arise as a result of a breach of the Agreement by Chavez. This is an appeal from the dismissal of a quiet title action. Therefore, we deny Barrus's request for attorney fees pursuant to the Agreement.

First American also requests attorney fees on appeal, pursuant to I.C. § 12–121, on the basis that Chavez's continuing claim against First American is frivolous and has not been bolstered by the addition of persuasive arguments or authority on appeal. "An award of attorney's fees under I.C. § 12–121 is proper 'only where the Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation.'" *Aberdeen–Springfield Canal Co.,* 133 Idaho at 95, 982 P.2d at 930 (1999) (quoting *Lanham v. Idaho Power Co.,* 130 Idaho 486, 500, 943 P.2d 912, 926 (1997)) (quoting *Thompson v. Pike,* 125 Idaho 897, 901, 876 P.2d 595, 599 (1994)). Chavez's claim against First American was grounded neither in law nor in fact. We are of the abiding belief that, to the extent Chavez challenged the grant of summary judgment to First American, her appeal was brought frivolously and First American is entitled to an award of attorney fees on appeal based on I.C. § 12–121.

This Court may, on its own motion, award attorney fees against an attorney who has violated I.A.R. 11.1. *Garcia v.*

**226**

*Pinkham,* 144 Idaho 898, 900, 174 P.3d 868, 870 (2007) (citing *Sprinkler Irrigation Co., Inc. v. John Deere Ins. Co., Inc.,* 139 Idaho 691, 698, 85 P.3d 667, 674 (2004)). In determining whether sanctions are appropriate under this rule, we have stated that a lack of legal or factual grounds for an appeal, alone, is generally not enough to support an award of attorney fees without a showing that the appeal was brought for an improper purpose. *Shriner v. Rausch,* 141 Idaho 228, 232, 108 P.3d 375, 379 (2005) (citing *Painter v. Potlatch Corp.,* 138 Idaho 309, 315, 63 P.3d 435, 441 (2003)). However, we have also stated that an "[i]mproper purpose may be inferred where an appeal is brought after the district court has advised counsel of the lawsuit's substantial failings." *Glaze v. Deffenbaugh,* 144 Idaho 829, 834, 172 P.3d 1104, 1109 (2007) (citing *Doe v. City of Elk River,* 144 Idaho 337, 339, 160 P.3d 1272, 1274 (2007)). This is such a case. Chavez's pursuit of this appeal, as it relates to First American, was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." The district court's opinion which declared the action against First American to be frivolous included an unusually candid expression of the district court's view of the motivation for the action against First American. Counsel for Chavez was clearly warned of the manifest absence of merit to this claim, yet elected to proceed. Accordingly, we award attorney fees to First American pursuant to I.A.R. 11.1.

### IV. CONCLUSION

We affirm the decision of the district court granting summary judgment to Respondents and dismissing Chavez's quiet title claim. We vacate the decision of the district court awarding attorney fees to Barrus and Baker & Harris. We affirm the decision of the district court awarding attorney fees to First American against Chavez, although only pursuant to I.C. § 12–121. We award attorney fees to First American on appeal pursuant to I.C. § 12–121 and against Chavez's counsel pursuant to I.A.R. 11.1. As prevailing parties, Respondents are awarded costs on appeal.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES concur.

