**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40963**

| | |
|---|---|
| HARVEY L. MAHLER, <br><br> Petitioner-Appellant, <br><br> v. <br><br> STATE OF IDAHO, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**2014 Opinion No. 56**

**Filed: July 18, 2014**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Gregory M. Culet, District Judge.

Judgment of dismissal, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Harvey L. Mahler was convicted of lewd conduct with a minor. In this case, he filed a petition for post-conviction relief after the statute of limitations had passed. The State responded with a motion seeking summary dismissal on that basis, but Mahler argued he was entitled to equitable tolling because of his intellectual disability. The post-conviction court considered the affidavits submitted by Mahler and records from the underlying criminal case and held that Mahler was not entitled to equitable tolling. Mahler appeals.

## I.

## BACKGROUND

Mahler was charged with four counts of lewd conduct with a minor in violation of Idaho Code § 18-1508. In the pretrial process, Mahler underwent a competency evaluation. After being seen by several evaluators who concluded that he was either borderline intellectually

1

disabled[1] or of low intelligence, Mahler was found competent to stand trial. Pursuant a plea agreement, Mahler entered an *Alford*[2] plea to a single charge, and the other charges were dismissed. The court entered its judgment of conviction on September 22, 2010. Mahler did not take a direct appeal.

On March 19, 2012, Mahler filed a petition for post-conviction relief asserting several claims of ineffective assistance of counsel. An attached affidavit indicated that Mahler has a "mental ailment" and "mental problems because of trauma to the head." The State responded with an answer and with a motion seeking summary dismissal, arguing that Mahler's petition was barred by the statute of limitations. The district court issued a notice of intent to dismiss, also on timeliness grounds.

In pro se filings and through appointed counsel, Mahler argued he was entitled to equitable tolling because his mental condition rendered him unable to file a timely petition for post-conviction relief. In support of this argument, Mahler and another prisoner submitted affidavits. Mahler's affidavit said that he had suffered head trauma and brain injuries that resulted in him having little memory of the criminal case proceedings and an inability to remember the time limit for filing a post-conviction action. The other prisoner testified that he had been housed with Mahler when they entered prison in 2010 and again in 2011. He said that when Mahler entered prison in 2010, he could barely speak or write his own name, that Mahler has "almost zero" memory or recall, and is clearly "challenged." He testified that the prison

---

[1]    In *State v. Hamlin*, 156 Idaho 307, 309 n.1, 324 P.3d 1006, 1008 n.1 (Ct. App. 2014), we used the term "mentally retarded" because that term was used by the experts in that case. We explained that:

> We endeavor to use accurate and respectful language. . . . However, in this case, the parties and the expert witnesses use the term "mentally retarded" as a term of art and we adopt their usage.

We also followed the existing practice of the United States Supreme Court. *See, e.g.*, *Atkins v. Virginia*, 536 U.S. 304 (2002). However, that Court has changed its practice. In *Hall v. Florida*, ___ U.S. ___, 134 S. Ct. 1986 (2014), the Court said that it was adopting the term "intellectual disability" because that term is "approved and used" by the experts in the field as reflected "in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders." *Id*. at ___, 134 S. Ct. at 1990. It also noted that the Court will treat the term "intellectual disability" as fully coextensive with its prior use of "mental retardation" "to describe the identical phenomenon." *Id*. We follow that practice in this opinion.

[2]    *See North Carolina v. Alford*, 400 U.S. 25 (1970).

placed Mahler in classes, which helped Mahler improve his ability to speak and write but did not appear to remedy his memory issues. The prisoner opined, "I do not believe that at the time he was sentenced [Mahler] understood the one-year requirement for filing a Petition for Post-Conviction relief." The prisoner also said that he "spent a great amount of time explaining to Mahler the concept of post-conviction actions and the associated timelines." Mahler's brief opposing summary dismissal represented that the fellow inmate "explained in detail for over an hour" Mahler's appellate and post-conviction rights to enable Mahler to "fully understand them."

At a hearing to address whether the statute of limitations for Mahler's post-conviction action should be equitably tolled, the court took judicial notice of records from the criminal case, including a transcript of the change of plea hearing in Mahler's criminal case, the sentencing hearing transcript, and the minutes of the competency hearing. The court then concluded that Mahler had not demonstrated a basis for tolling the statute of limitations. It reasoned that Mahler's showing that he had been unable to understand his right file a post-conviction action until someone explained it to him repeatedly or in great detail was insufficient because the mental impairment merely made filing more difficult, not impossible. The court held that the equitable tolling standard requires a condition that results in the inability to understand one's rights or to take the steps necessary to vindicate those rights, and there was "no indication, no expertise, nothing to indicate that he actually had this condition." Finally, the court explained that it was disinclined to find that the requirements for equitable tolling had been met in light of "the record that a determination was made that he was competent to understand the proceedings and assist [his attorney at trial]." The district court therefore dismissed Mahler's petition. Mahler appeals.

## II.

## ANALYSIS

A petition for post-conviction relief may be summarily dismissed if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *State v. Payne*, 146

3

Idaho 548, 561, 199 P.3d 123, 136 (2008); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994). Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008); *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg v. State*, 131 Idaho 517, 519, 960 P.2d 738, 740 (1998); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

The failure to file a timely petition is a basis for summary dismissal of a post-conviction petition. *Sayas v. State*, 139 Idaho 957, 959, 88 P.3d 776, 778 (Ct. App. 2003). The applicable statute of limitations requires that post-conviction actions be filed within one year from the expiration of the time for appeal in the criminal case or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later. I.C. § 19-4902(a). *Freeman v. State*, 122 Idaho 627, 628, 836 P.2d 1088, 1089 (Ct. App. 1992).

Equitable tolling may excuse the untimely filing of a petition for post-conviction relief. "Equitable tolling in a post-conviction action has been recognized by Idaho appellate courts in two circumstances--where the petitioner was incarcerated in an out-of-state facility without legal representation or access to Idaho legal materials, and where mental disease and/or psychotropic medication prevented the petitioner from timely pursuing challenges to the conviction." *Leer v. State*, 148 Idaho 112, 115, 218 P.3d 1173, 1176 (Ct. App. 2009) (internal citations omitted). "The bar for equitable tolling for post-conviction actions is high." *Id.* (quoting *Chico-Rodriguez*

4

*v. State*, 141 Idaho 579, 582, 114 P.3d 137, 140 (Ct. App. 2005)). "American courts generally have applied equitable tolling only in rare and exceptional circumstances beyond the petitioner's control that prevented him or her from filing a timely petition." *Leer*, 148 Idaho at 115, 218 P.3d at 1176. It is not enough to show only that compliance was made more difficult on account of a mental condition. *Chico-Rodriguez*, 141 Idaho at 582, 114 P.3d at 140. The standard for tolling in a post-conviction action was articulated in *Chico-Rodriguez* as follows:

> [I]n order for the statute of limitation under the UPCPA to be tolled on account of a mental illness, an unrepresented petitioner must show that he suffered from a serious mental illness which rendered him incompetent to understand his legal right to bring an action within a year or otherwise rendered him incapable of taking necessary steps to pursue that right. Equitable tolling will apply only during the period in which the petitioner's mental illness actually prevented him from filing a post-conviction action; any period following conviction during which the petitioner fails to meet the equitable tolling criteria will count toward the limitation period.

*Id*.

The fact that Mahler was found competent to proceed in the criminal case is not determinative of the equitable tolling issue.

> [T]he test articulated in *Stone*[3] for determining the competence of a criminal defendant to stand trial is not appropriate for determining whether the statute of limitation for a post-conviction action should be tolled due to mental illness. The petitioner in a post-conviction action will not necessarily be represented by counsel. In fact, in the vast majority of cases, such petitions are filed pro se. Because the proceedings are brought by, rather than against, such a person, and because the petitioner will be self-represented, a competency determination cannot logically be based upon whether the petitioner understands "the proceedings against him" and whether he is able to "consult with his lawyer." On the other hand, the *Nix*[4] standard advanced by [the petitioner] is equally unhelpful. Although evidence showing whether a petitioner was capable of

---

[3]    *Stone v. State*, 132 Idaho 490, 492, 975 P.2d 223, 225 (Ct. App. 1999) (holding that the "test to determine whether a criminal defendant is competent to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him"); *see also Dusky v. United States*, 362 U.S. 402, 402 (1960); *State v. Powers*, 96 Idaho 833, 842, 537 P.2d 1369, 1378 (1975).

[4]    *State v. Nix*, 40 S.W.3d 459, 463 (Tenn. 2001) (holding that "due process requires tolling of the post-conviction statute of limitations only if a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities").

managing his personal affairs will be relevant to whether he was competent to pursue a UPCPA action, the dispositive question is not whether the individual was able to manage his personal affairs, but whether his mental illness prevented him from complying with the statute of limitation for filing a post-conviction action.

*Chico-Rodriguez*, 141 Idaho at 581-82, 114 P.3d at 139-40 (internal citations omitted).

Thus, the question presented is whether Mahler has made a prima facie showing that his intellectual disability actually prevented him from filing his petition within the limitations period. A showing that filing a timely petition would merely have been more difficult for Mahler than for an inmate of average intelligence is not sufficient. This distinction is illustrated in *Sayas*, 139 Idaho at 960, 88 P.3d at 779, where the petitioner sought equitable tolling because he could neither speak nor write in English. We acknowledged that the language barrier created an obstacle to timely filing of a petition for post-conviction relief, but affirmed the judgment of dismissal, holding:

> While there may be circumstances in which a language barrier would legitimately give rise to an access to court claim for purposes of extending the filing deadline, such is not the case here. It is evident that Meza Sayas had access to bilingual assistance while incarcerated, and was able to adequately explain his circumstances to this person.

*Id.* We noted that even an English-speaking, nondisabled prisoner may have great difficulty amassing the information and employing the skills needed to timely file a petition for post-conviction relief. Nevertheless, the law requires that a petitioner seeking relief from the court must overcome these obstacles if he wishes to seek relief. Additional impediments, such as an inability to speak English, do not necessitate equitable tolling unless those impediments "actually prevent[] [a petitioner] from filing a post-conviction action." *Chico-Rodriguez*, 141 Idaho at 581-82, 114 P.3d at 139-40.

In this case, Mahler submitted three affidavits in response to the State's motion for summary dismissal. In his initial affidavit, Mahler testified that he had "head trauma" resulting in a "documented mental ailment." A later affidavit explained that Mahler could not remember either the original court proceedings or the timelines applicable to a post-conviction action. Finally, an affidavit submitted by a fellow prisoner explained that Mahler was particularly limited when he entered prison. He could "barely talk" and could "hardly write his own name" until provided classes within the prison. The affidavit said Mahler had no understanding of post-conviction proceedings until the fellow prisoner went out of his way and spent a good deal of

6

time explaining the entire process to Mahler.[5]  The fellow prisoner described Mahler as "challenged" and opined that Mahler's "memory/recall is almost zero."

We conclude that Mahler's affidavits are insufficient to present a genuine issue of material fact.  First, the statement that Mahler does not know or cannot remember the applicable statute of limitations is irrelevant.  The relevant question is not whether he knew the statute of limitations, but whether he had the ability to file his post-conviction claims for a reasonable time before the limitations period expired.[6]  Second, Mahler provided no evidence as to when he became able to pursue a post-conviction action with assistance.  His affidavit says he was provided help in 2011.  He did not file his petition until March 2012.  Accordingly, based solely on the admissible evidence submitted to the post-conviction court, Mahler may have taken many months to file his petition *after* the right to do so was adequately explained to him.  Although Mahler claims to have been unable even to communicate orally upon his arrival at the prison, his evidence does not state when this inability ended.[7]

---

[5]  It appears that the fellow prisoner actually wrote Mahler's petition and pro se affidavit. For example, Mahler's affidavit states:

> The Inmate offered to help the petitioner after He explained [the relevant procedures to the petitioner] in Detail for over an hour . . . in a way that the petitioner could fully understand them.  *I being that Inmate* and realizing the petitioner had no idea how to file a post-conviction petition offered to help the petitioner.

(emphasis added).  We also note that the handwriting in the petition and other pro se documents filed by Mahler does not match Mahler's signature.  We therefore reject the State's contention on appeal that Mahler must not be intellectually disabled because he was capable of drafting cogent briefing and affidavits.

[6]  In *Evensiosky v. State*, 136 Idaho 189, 30 P.3d 967 (2001), the Idaho Supreme Court addressed a post-conviction petitioner's argument for tolling the statute of limitations where the petitioner had approximately six weeks within which he could have filed a post-conviction action after discovering the facts that gave rise to his claim and before he was transferred to an out-of-state correctional facility.  This, the Supreme Court said, was "sufficient time while in Idaho to pursue his claim before the statute of limitations expired," and therefore equitable tolling was denied.  *Id.* at 191, 30 P.3d at 969.

[7]  We also note that this claim is contradicted by evidence from the criminal case, including psychological evaluations which showed that Mahler spoke to evaluators without difficulty.  One evaluator commented:  "Harvey spoke softly but generally clearly and coherently.  He displayed a basic vocabulary and spoke at a normal rate and rhythm.  Harvey displayed fair expressive language skills and good receptive language skills."  That evaluator diagnosed Mahler with mild

Third, there is no evidence in the record that Mahler made any attempt to use the resources made available by the prison for illiterate inmates. According to his brief below, Mahler was able to understand the relevant procedures after "over an hour" of help from a fellow inmate. There is no evidence that Mahler ever sought help earlier or would have been unable to file his petition earlier using the aid provided by the prison. In short, Mahler's evidence shows that for some undefined period after his incarceration he did not understand that he could file a post-conviction action and did not know the statute of limitations. The same could undoubtedly be said for nearly every first-time inmate upon his or her arrival at a state prison. They learn about these matters by giving attention to information provided by the prison and through conversations with other inmates. Mahler has not shown that his intellectual disability actually prevented him from filing a post-conviction action within the limitations period.

For these reasons, we conclude that Mahler failed to make a prima facie showing of entitlement to equitable tolling of the statute of limitations.

Therefore, the judgment of dismissal is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**

---

mental retardation. A second evaluator diagnosed Mahler as having low-average intelligence or borderline mental retardation. A third evaluator stated that Mahler had "adequate receptive and expressive language skills" and made no diagnosis regarding Mahler's mental disability, but noted that he had a "limited intellect."